CAROLINE PAGLIARULO *vs.* THE NATIONAL SHAWMUT BANK OF BOSTON, executor, & others.[1]

Essex. November 8, 1967. — January 3, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Personal Property*, Tangible personalty, Horse, Check. *Horse. Bills and Notes*, Check. *Devise and Legacy*, Extrinsic evidence affecting construction, Tangible personalty. *Evidence*, Extrinsic affecting writing.

Testimony as to what might have been in a testator's mind when he executed his will could not be resorted to in order to create an ambiguity in unambiguous language of the will. [450]

Thoroughbred horses of a testator were, but a cashier's check of a bank payable to the testator was not, "tangible, personal property" within a bequest of all such property in the testator's will. [450, 451]

PETITION filed in the Probate Court for the county of Essex on September 29, 1965.

The case was heard by *Costello*, J.

*James R. DeGiacomo* for the respondents.

*Walter F. Henneberry (David H. Kopelman* with him) for the petitioner.

WILKINS, C.J. By clause Fourth of the will of Joseph A. Gavegnano, late of Lynnfield, his daughter Caroline is given all his "tangible, personal property." This petition in the Probate Court, Essex County, seeks a declaratory decree that nineteen thoroughbred horses owned by the

[1] Henry J. Gavegnano, individually and as coexecutor with the bank of the estate of Joseph A. Gavegnano, John J. Gavegnano, and Joseph Gavegnano.

testator and a cashier's check of the respondent bank payable to him are "tangible, personal property" within that clause. The judge entered a decree that they are such property. The respondents appealed. The judge made a report of the material facts found by him under G. L. c. 215, § 11. The very brief report does not present all the detailed matters upon which the arguments are based, and for these we must look to the reported evidence.

The testator died on August 20, 1964, and was survived by four children: the petitioner and three sons, the respondents Henry, John, and Joseph. The will gives certain real and personal property (used as a filling station) to Henry, directs the incorporation of the testator's bakery business and gives the capital stock to Henry and John, and as stated above bequeaths all his "tangible, personal property" to the petitioner. The residue is divided in equal shares among the children or the survivors of them.

The will is not ambiguous, and must stand as written. *Best* v. *Berry*, 189 Mass. 510, 512. *Mahoney* v. *Grainger*, 283 Mass. 189, 192. It is not an aid to interpretation to resort to testimony as to what may have been in the testator's mind in order to create an ambiguity not evident from the language of the will. *Keith* v. *Worcester County Trust Co.* 338 Mass. 41, 43. *Whitbeck* v. *Aldrich*, 341 Mass. 326, 329.

1. The nineteen thoroughbred horses were tangible personal property, as the judge correctly ruled. The horses were, of course, not real estate. Instead, they were personal property, palpable, susceptible to the sense of touch, capable of ownership, and endowed with intrinsic value. See *Moeller, McPherrin & Judd* v. *Smith*, 127 Neb. 424, 433; *H. D. & J. K. Crosswell, Inc.* v. *Jones*, 52 F. 2d 880, 883 (E. D. S. C.); *Roth Drug, Inc.* v. *Johnson*, 13 Cal. App. 2d 720, 734; *In re Estate of Berman*, 39 Ill. App. 2d 175, 178. The respondents concede that the horses "were tangible in that they were perceptible to the senses," but nevertheless argue that they were "also clearly intangible in that they also were a composite of a going business enterprise." The

horses, with such reputations as they may have earned on the track, are likened by the respondents to "the good will of any business." The judge did not find that the testator was engaged in owning horses as a business. Neither do we. Even if there had been such a business, there was nothing to prevent the testator making a gift of the horses.

2. The cashier's check of the respondent bank was in the amount of $33,000 payable to the testator. Its date cannot be established from the record. The petitioner's argument, based on the supposed treatment of the $33,000, namely, that the cashier's check was held by the manager of the bank, cannot be sustained. The testimony as to whether the check was in the possession of the testator or in that of the bank at the date of his death is in conflict and is an unsatisfactory basis for a finding. The circumstances of the bank's coming into possession of the check, if indeed it ever did, are not clearly spelled out, and we are unable to draw any reliable inference from them. The judge found that it was in the possession of the testator.

The issue of whose was the possession, however, is inconclusive. The real test is the character of the instrument. The cashier's check is analogous to a promise to pay by the bank. It is not a right against any specific $33,000 of the bank's assets. Its value is as a right against the bank to receive its face amount. It is not significant for its signature as an autograph or as an instrument which has value as merchandise. The right to collect is a chose in action. *Lewis* v. *Club Realty Co.* 264 Mass. 588, 590. See *Millett* v. *Temple,* 280 Mass. 543, 549–550; *Reardon* v. *Whalen,* 306 Mass. 579, 581.

We are of opinion that the cashier's check is not tangible personal property under clause Fourth.

3. The decree is to be modified by striking out the statement that the cashier's check is tangible personal property and by stating instead that it is not tangible personal property; and as so modified, the decree is affirmed. Costs and expenses are to be in the discretion of the Probate Court.

*So ordered.*